JAMES GOODLOE v. CITY OF CINCINNATI.

When the corporation of a town acts illegally and maliciously, to the prejudice of an individual, an action on the case, for damages, may be sustained against such corporation.

THIS cause was adjourned here for decision, by the Supreme Court of Hamilton county. It was an action on the case, for an injury done to the real estate of the plaintiff.

The declaration states that the plaintiff, prior to the injuries received, was seized and possessed of a lot of land (describing it by

number), and a brick house thereon, situated on the north side of Water street, in the said city; that he, the plaintiff, had expended large sums of money in erecting the walls of his said house, in placing a cellar under the same, in fitting and accommodating the doors, windows, cellar, and every part of his said house for the convenience and accommodation of himself and family as a place of residence; and for the same purpose, and at like expense, had paved the said street and side-ways thereof, next to and adjoining his said dwelling, as well for the accommodation of his said family, as for the convenience and accommodation of those with whom they held intercourse. To make the said conveniences complete, and render the house valuable for the purposes intended, its doors, walls, windows, ways, walks, etc., were all finished with an express view to the level and grade of said Water street, as pre-

501] viously made by the defendants. That *the defendants, while the plaintiff was so enjoying his house and lot, maliciously and without cause, etc., dug up and destroyed said street, pavements, ways, etc., to the depth of five feet; took and removed the stone, earth and gravel, etc., by reason of which the walls of his house were injured, his cellar destroyed, and himself and family deprived of the use of his house, etc.

The defendants demurred generally, and the cause was adjourned for decision on the demurrer.

Fox and STORER, in support of the demurrer:

As a general principle it is admitted that an action of trespass on the case will lie against a corporation for all acts of *nonfeasance;* but for acts of *misfeasance* in a corporation, the right to sue must depend upon the peculiar circumstances of the case. The present defendants, who compose the corporation of Cincinnati, by the law of 1827, which was in force at the time of the acts complained of, were authorized "to cause the streets, lanes, alleys, and commons of the city to be *kept open* and in *repair,* and free *from all kinds of nuisance.*" "They have the power to appoint supervisors of the *highways,* and the exclusive control and care of such streets." The right, then, to enter upon, to improve and repair the public highways, by her agents and servants, must be conceded to the city; and having thus a right to act, a discretion is necessary, on the part of these agents, in order to act efficiently.

The power thus conferred is a beneficial one; and to effect fully

the object for which it is given, great liberality of construction is due whenever its exercise is called in question. We therefore conclude that in all cases where a corporation, similar to the present, is sued for a *misfeasance*, it must appear in the declaration that the act for which reparation is sought was either negligently or maliciously done. It must also appear what the injury is, its nature and extent.

Let us inquire, in the first place, what power was delegated to the city, and how far their officers and agents are to be protected in its exercise. The right to direct all public improvements is wisely confided to the city council, who *may legislate upon [502 the matter, with a full knowledge of the necessities, as well as of the resources of the community. This right implies, and, in fact, supposes a liberal discretion to be employed by those who are called on to act. In the laying out of new, and in the repair of old streets, many circumstances must exist to determine the conduct of the corporation as to the extent of the work to be performed as well as the mode in which it is to be executed. The public health may require that the sewers should be constructed on a different plan from that hitherto followed. The cleanliness, convenience, and safety of the public, may require that the streets should be widened, their surfaces graduated, and various alterations made, which can be understood by those only to whom the immediate charge is given. Having these duties to perform, it would follow that any change in the structure of the pavements, any excavations in the streets, any alterations in the sewers, would be a legitimate exercise of power, subject, however, to the supervision of a court of law, whenever the injury is wantonly done, or the jurisdiction of the corporation is exceeded.

In the case of the Governor and Company of the British Cast Plate Manufacturers *v.* Meredith and others, 4 D. & E. 794, it is decided that when an act authorizes commissioners to pave, by reason of which an individual is injured in his property, and there is no excess of jurisdiction on the part of the commissioners, neither they nor their servants acting under them are liable for such injuries. Lord Kenyon discusses the question on the only safe and just ground upon which it can be placed. He says: "That where the officers do not exceed their jurisdiction, no action will lie. Some individuals suffer an inconvenience under all these acts of parliament; but the interests of individuals must

give way to the public accommodation." And Judge Buller, in the same case, says: " There are many cases in which individuals sustain an injury for which the law gives no remedy; for instance, pulling down houses, or raising bulwarks for the preservation and defense of the kingdom, etc. This is one of those cases to which the maxim applies: ' *Salus populi, suprema est lex.*' If the thing complained of was lawful at the time, no action can be sustained against the party doing the act."

503] *In Sutton *v.* Clarke, 6 Taunt. 42, the action was against the trustees under a turnpike act, for cutting a drain through certain lands. The consequence was considerable damage to the plaintiff's estate; yet it was held that the defendants, acting within their jurisdiction, and according to the best of their information, could not be answerable for the consequences of their acts.

In Harman *v.* Tappenden et al., 1 East, 555, it was held, "that an action does not lie against individuals, for corporate acts, erroneously done, from which injury happens to the plaintiff, unless there is evidence of malice."

In Steele *v.* The Western Island Lock Navigation Company, 2 Johns. 286, the court decided, if the company, in making the canal, acted under the authority of a legislative act, unless they exceeded their jurisdiction, no action would lie against them for any damages occasioned by the cutting of the canal.

In Cossler *v.* The Corporation of Georgetown, 6 Wheat. 593, where a bill was filed to prevent the corporation from cutting down a street, by the plaintiff's land, on the ground that the street had already been graduated, and improvements made accordingly, it was held that the corporation had a right to fix the grade, whenever, in their discretion, it should be deemed proper. Chief Justice Marshall observes: " There can be no doubt that the power of graduating and leveling streets ought not to be capriciously exercised. Like all powers, it is susceptible of abuse, but is trusted to the inhabitants themselves, who elect the corporate body, and who may, therefore, be expected to consult the interests of the town." The whole opinion of this eminent man is full to the point for which we contend.

In Callinder *v.* Marsh, 1 Pick. 418, the Supreme Court of Massachusetts decided, " that a surveyor has authority, by the statute, to dig down or raise a street; and if he does it with dis-

cretion, and not wantonly, a party injured can not maintain a suit against him, nor any other person." In this case the action was brought against the defendant, for digging down the street by the plaintiff's dwelling house, in Boston, and taking away the earth, so as to lay bare the foundation walls of the house, and endanger its falling; in *consequence of which the plaintiff [504 was obliged, at great expense, to build up new walls, and otherwise secure the house, and render it safe and convenient of access as before. The defendant justified as *surveyor* of the *highways;* and under his general power to act as *such*, he committed the act complained of. Chief Justice Parker very elaborately examined the matter in dispute, and came to the conclusion already referred to. He answers, it seems to us, every objection, and establishes his decision upon the soundest arguments as well as the clearest authority.

· Having thus explained the right and power of the defendants, not only from the reason of the thing, but by adjudged cases, we will inquire, in the second place, how far the plaintiff has entitled himself to recover by the facts stated in the declaration. The authorities already cited, establish the principle, that unless the power is abused, or the jurisdiction exceeded, no action will lie.

The plaintiff alleges, " that defendant entered upon the street adjoining his premises, and by his agents and servants, cut down, and dug, and tore up the same to the depth of six feet; whereby the *sidewalk* has become *useless*, his house materially *injured*, his cellar ruined and made unhealthy, and liable to the influx of water, and the convenience of passing and repassing destroyed." It will be seen there is no allegation of *malice*, or of *negligence*, or of an *abuse of power* on the part of the defendants; and as these constitute the gist of the action, they must be averred, or no case is made.

In Harman *v.* Tappenden et al., 1 East, 555, an action on the case for depriving plaintiff of his office of a freeman, in the company of " *Free Fishermen*," the judges expressed great doubt as to the propriety of a suit against the corporation, and explicitly held, that unless there was an allegation of *malice*, on the defendants' part, no action could be maintained. Lord Kenyon and Justice Lawrence declare, that no error of judgment can furnish grounds for a suit; and decide the direct point, that the defendants can not be made liable, unless they acted willfully and maliciously.

In Barnardiston v. Soune, 2 Levinz, 114, an action against the sheriff of Suffolk for maliciously intending to deprive the plaintiff of the office of knight of the shire, it was held by 505] *the three judges, that if the return was *maliciously* made, the jury ought to find for the plaintiff, which they did. The judgment was afterward reversed in the exchequer, notwithstanding the allegation in the declaration that the act was done "*falso et malitiose et ea intentione,*" 3 Levinz, 30; and the last judgment affirmed in parliament. 1 Lutwich, 89. It is said that this decision gave rise to the statute 7 and 8 W. & M. 6, 7, which gives an action against the returning officer, for all returns *willfully made,* and for *double returns, falsely, willfully, and maliciously made.*

In Drewe v. Colton, 1 East, 162, in note, the same question was fully examined, and the court arrived at the same conclusion.

In Matthews v. The West London Water-works Company, 3 Camp. 402, negligence was expressly averred.

In Jenkins v. Waldron, 11 Johns. 114, an action was brought against the inspectors of an election, for refusing the plaintiff's vote; and Judge Spencer, in reversing the judgment of the court below, says: "It is not alleged or proved that the inspectors *fraudulently* or *maliciously* refused to receive the vote; and this we conceive to be absolutely necessary to the maintenance of an action against the inspectors of an election."

In the case of Chestnut Hill and Spring House Turnpike Company, plaintiffs in error, v. Rutter, 4 Serg. & Rawle, 6, where an action was brought for stopping a watercourse belonging to defendant in error, the allegation against the company was: "They did *wrongfully* and *unjustly erect* and *set up* certain *jetties* and *piers,* by reason whereof, the water was thrown back, etc. After verdict, Chief Justice Tilghman says: "We are bound to presume it was proved that the defendants were *in fault* in the manner of erecting the piers." Again, he says: "Granting that they would not be responsible for damages *unavoidably resulting from a bridge built in the best manner, and obstructing the passage of the water no more than was necessary* for its proper construction, it would not follow that they should not be answerable for damages arising from a bridge so *carelessly* and *inartificially* built as to occasion an *unnecessary* and *wanton* obstruction."

506] *In the case of Leader v. Moxon, 3 Wilson, 561, the court held the commissioners for *pavements* responsible, as they had

462

acted *arbitrarily* and *oppressively*. In Clarke v. Foote, 8 Johns. 329, it is said that it is a lawful act for a person to *burn* his *fallow*, and if his neighbor is injured thereby, he will have a remedy by action on the case, if there be sufficient ground to impute the act to the *negligence* or *misconduct* of the *defendant or his servants*.

In Panton v. Holland, 17 Johns. 98, where an action was brought to recover damages against the defendant for digging in a lot contiguous to the plaintiff's premises, whereby the foundation walls of his house was *subverted*, etc., the court decided "that no man is *answerable in damages for the reasonable exercise of* a right which is accompanied by a *cautious regard for the rights of others*, when there is no just grounds for the charge of *negligence* or *unskillfulness*, and when the act is not done *maliciously*."

In the note to Varick v. The Corporation of New York, 4 Johns. Ch. 55, the same doctrine is held.

One general principle is held to govern all cases in which corporations or individuals are sued for torts. If they possess the power to act "*prima facie*," their acts are held to be within their jurisdiction, unless the contrary expressly appears. This rule is extended so far, that all judicial officers are protected in the exercise of their duties, being responsible for no error of judgment, and amenable only where their powers are directly abused or clearly transcended. The necessity for this doctrine grows out of the relation which public bodies, as well as individuals vested with authority, sustain to the community. Where power is conferred, and the responsibility of exercising it assumed under high legal sanctions, there can be no presumption of *intentional wrong* on the part of those who exercise that power; an abuse of trust may be proved, but it never can be *supposed*.

There is no general allegation that the corporation have made themselves legally liable in the mode contended for by the defendants, and an examination of the matters set out in the declaration will furnish, it is believed, no grounds from which *malice, negligence*, or *excess of jurisdiction* can be inferred.

*It is said a level or grade had once been established by [507 the city; but the power to make, presupposes a power to change. The act is a matter of legislation merely, not one of contract. A moment's reflection must convince us, that the necessities of the community may require frequent modifications of all municipal regulations; and were the progress of public improvement to be

stayed by suggestions of supposed injury to individuals, the whole system would be greatly *impeded*, if not *destroyed*.

The case of Gossler *v.* The Corporation of Georgetown, already referred to, embraces the whole of this discussion; and it is there expressly said, that if the *corporation do establish a level or grade, it is not unalterable.* So long as they have legislative power, they may alter or change it. It will be recollected, that in the case quoted, the charter of Georgetown fixed the grade as it should be permanently established; and yet the corporation were afterward permitted to change it. It is not averred that the street is dug below the *walls* of the plaintiff's *house;* that his *walls are injured*, or in what manner the building has become *unhealthy;* nor how the walls are rendered less secure.

There is no direct positive statement of any actual injuries; the whole charge is by way of inference, and refers rather to what is to come than to what has already occurred. On such a charge, the defendant, it seems to us, can not be held to answer.

GAZLAY, contra :

On the legal and universally received maxim, "that for every injury there is a remedy," this cause would be determined with but a moment's deliberation; the only question that could be made, would be the one involving the amount of damages.

The defendants admitting the property of the plaintiff, his rights of enjoyment, and the injury sustained, say that the law affords him no remedy.

And why does the law afford him no remedy? Is it upon account of the peculiar character of the defendants? The peculiar 508] character, or nature of the injury sustained by their *act; or any peculiar powers they possess to do that act? It is apprehended that if justification and impunity can not be found under one of these heads, they will nowhere be found.

The character of the defendants is a corporate one; this furnishes no excuse for the commission of an injury; the authorities on both sides of the Atlantic sustain this position. In Gray *v.* Portland Bank, 6 Mass. 364, the court determined that a corporation is liable for wrongs done by itself or agents. In Townsend *v.* Susquehanna Turnpike Co., 6 Johns. 91, the same principle was recognized. The company were held responsible for the injury sustained by the falling of a bridge. In 4 Serg. & Rawle, 6, we

Goodloe v. City of Cincinnati.

find the same principle again, in the case of a turnpike company.

The action was in case for an injury sustained to a tanyard by the construction of a bridge, causing the water to flow back upon the tanyard. The action, after full argument of the objection, " that corporations are not liable for injuries of the kind," was sustained, and damages given.

The character of the defendants, as corporators, does not, therefore, clothe them with any legal immunity, in the case before us.

The power of the defendants, as corporators, and the nature of the injury sustained, may conveniently be considered together.

The powers of a corporation in this country arise exclusively from the charter of incorporation. That is, corporations are the creatures of the law, in contradistinction to the common law—or, in the words of the chief justice in the case of Head v. Armory, 2 Cranch : " A corporation is precisely what the act of incorporation has made it."

1. What does the law authorize the defendants to do in relation to the matter before us ?

Section 12 of the law of January, 1827, authorizes the city to open and lay out streets, lanes, alleys, etc., and saves a compensation to those whose lands or property shall be appropriated. The same section and paragraph make it a duty of the city to keep the streets, lanes, and alleys in repair, and free from nuisance. The first question presented, *is, does the remedy [509 sought for, in the present action, belong to, or arise under this section. Two powers are recognized by this section. The one to open, the other to lay out. Sections 6 and 19 of the act providing for roads, Revised Code, 303, gives the meaning of these terms. Roads are to be laid out on petition by the commissioners, who have no power to open. This latter must be done by the supervisors. They are distinct and separate acts—and, by the state law, confided to distinct and separate officers ; but by the charter, both are given to one and the same body, viz : the city.

The State law provides no damages for laying out a road or highway, but distinctly provides for the recovery of damages arising from opening, after being so laid out. The law of incorporation does not say, that the party injured shall be paid for his land or his house, or the decreased value of his property. It uses the words " land or property," and " injury sustained "—selecting, evi-

dently, the broadest of terms, those best calculated to embrace every kind of injury, arising from the opening, not from the laying out. This construction accords with the reading of the statute law, one section of which gives compensation for the immediate injury done by opening; and another section, for more remote injuries, such as taking timber, stone, etc.

The provision, allowing the citizen damage for an injury sustained, is a munificent and beneficial one, and must be so construed. Strike from the law, giving power to the city, the authority to *lay out* any new street, lane, or alley, and then construe the power to open the same, as it must be construed in the state law, and all difficulty vanishes. It will then read to this effect, viz: the city may *open* or *dig down* any street, lane, etc.; but any person whose land or property shall have been thus appropriated, dug down, or injured, shall be paid the amount of injury sustained thereby. This construction will make the law consistent with itself, as well as with the principles of the state law, in relation to compensation for injuries done to real estate. If it is not to be so construed, we are obliged to reject, as unmeaning, that clause in the charter, which prohibits the city from the exercise of any 510] power not sanctioned by the constitution and laws of the *state. We are also obliged to draw the conclusion, that when a road is opened, under the authority of the township officers, the citizen has rights and remedies, which he has not, if opened under the city authorities. That is, if one lives in the country, and has sustained ever so trifling an injury to his timber, soil, or gravel, the law gives him a remedy; but if he reside in the city, his house may be torn down, his stone and pavements taken away, or his cellar and walls ruined—yet he has no remedy. Such an inconsistency we have no right to charge upon the legislation of the state, in this, if in any case.

It has been contended that the command expressed in the section of the charter now under consideration, viz: "the city council shall cause the streets, lanes, etc., to be kept open, in repair, and free from nuisance," confers on the city unlimited power and discretion to do all and every act which to them may seem fit and proper, and that, too, with impunity. If the city has this power, it is what the general assembly itself, and what no county or township has, or can have. The power, whatever it may be, is a strict and measured one, to be exercised with a view, and a direct view,

Goodloe v. City of Cincinnati.

to the objects of the grant. It was granted for public benefit, which must embrace private benefit and security.

" *To open* " means cutting and digging, when it applies to a road, or it means nothing. " To keep open," is another and different term entirely, and implies or gives no such power. It refers to the word " nuisance," strengthens and supports it; and embraces precisely what the terms " free from nuisance " will embrace, viz: to prevent the placing in the street, lane, or alley, etc., any impediment to the free and convenient public use of the same. The power to remove nuisances, is so necessary to the public, that in relation to public roads it may not only be exercised by all road officers, but by every private citizen, who is like to be incommoded by the existence of the same. The term "impair," appended to "keep open," implies nothing more than to replace or amend the defects, occasioned by common use. There is, then, three distinct objects embraced by the act of incorporation: 1. A power to lay out a road. 2. A power to open or dig and cut it. fit for use. 3. To keep it open, in repair, and *free of nuisance. The [511 first two are separate and distinct powers, both conferred upon the city by one section, not necessarily exercised at one and the same time, as constant practice has long since determined; under which, the city are every day opening, cutting, and digging out roads, which were laid out long before the act of incorporation. The act complained of, is the opening, cutting down, and digging away of a street. This the city had a right to do; but the statute which confers the right, requires them to pay the damages sustained.

To apprehend correctly the nature or character of the injury, it is required only that we look at the nature and object of the power under which it has been committed. The whole frame of social society rests on the position that single individuals will not and can not do all which their own prosperity and happiness require to be done. Experience has long since determined what portion of the public prosperity can be safely confided to single individual exertion. At this point, and at this point only, do we commence the exercise of public power, and that for the general benefit. We say, practically, that a single citizen is not rich enough, strong enough, or sufficiently munificent to make a road or canal. The public good requires both to be done. The public power is therefore exerted for their accomplishment. But this

public power must be exerted at the public expense or contribution ; if not, oppression and injustice, more than the public benefit, would be the result; and society, barely from the want of it, would dissolve by common consent. The constitution recognizes this principle, when it declares that private property shall be held subservient to public welfare: Provided, etc. Is there, or can there in justice be, any exceptions to the principle?

In a good government are any allowed to imagine a single case where the property of a citizen may be despoiled for the public benefit; and yet that citizen can be compelled to suffer without redress?

And yet the defendants contend that this is not such an injury as, by the principles of the constitution and laws of the land, can be redressed. In other words, if the plaintiff had erected no: 512] house on his lot; had made no pavements or *improvements, and the defendants had then laid out and opened the road, he would have been entitled to damage. That is, if they had done the plaintiff but little injury he might have recovered; but having done him a great one, he is without redress.

The defendant also insists that there are authorities which abundantly support the position he takes against the plaintiff. The case of Callinder v. Marsh, 1 Pick. 418, is cited as one in point. It is true that the declaration in that is similar to the one filed in this case. Yet no demurrer was put in. There was a special plea, and the defendant escaped under the law of Massachusetts and the particular circumstances of the case. Perhaps the escape was a just and legal one, but the question was not made, or even referred to, viz: whether the law will sanction a recovery in any case, much less whether the laws of Ohio will sanction one.

The case in Pickering, like every other case, must be confined to the matter before the court. The defendant plead that he was an overseer, or commissioner of the street, and set forth the object and purpose for which the act complained of was done, which, as far as it can be gathered from the report, was the cutting down and leveling a hill—if not a nuisance, certainly not far short of one. The law, too, as far as we are informed, gave to the commissioner full power to cut, dig, level, and remove everything which was calculated to hurt, hinder, or incommode the use of the highway or street. The power under the law appears to be referred to in express terms, and whatever the commissioner might do ap-

Goodloe *v.* City of Cincinnati.

pears to be named, and that, too, without saving any right to damages. This is certainly a very different case from the one before us. Damages are allowed, it would seem, where new space is taken into the street, or houses taken down, and a party injured thereby.

The argument for the plaintiff went much upon the ground that the power complained of was not exercised by the right officers. Whatever the argument may be, the court, it would seem, place the case on two points, as the turning ones in the cause: 1. The express and particular power given to the surveyor, which enabled him to cut, dig, level, grade, and remove any and every obstacle, or *inconvenience in the way. 2. The proper and dis- [513 creet exercise of this power, as to which the court say, if the power be improperly or unnecessarily used, the aggrieved is entitled to damages. Here, then, is an unanswerable objection to the authority of the case for the defendants. This court have not, and can not have the facts before them on demurrer to the declaration, and until they are produced the court can not say whether the power applies to the case, or whether its exercise has been wanton or indiscreet, or not.

The declaration states that the acts complained of were unlawful and unjust, and done maliciously. The case just cited is, then, directly in point for the plaintiff; as are also the cases cited from 4 Sergeant & Rawle, 6.

In the case from Pickering it is not even contended that the general words, "*repair or free of nuisance*," give power to dig up or level down a whole street.

The question whether a corporation or individual is answerable for damages, when acting within the scope of authority, and in good faith, is not settled by any of the cases referred to. In 4 Sergeant & Rawle, above cited, the court refused to decide it. It can not arise in the case before us, inasmuch as the declaration avers improper motives, and the facts are not before the court.

By the COURT:

Whatever may have been the ancient doctrines, with regard to the liability of corporations, for wrongs done by their agents, courts have gradually departed from them, and adopted principles more congenial to the state and condition of the world. Corporations are established in our country for almost every concern of life—

political, pecuniary, and eleemosynary. They govern towns, construct roads, engage in manufactures, trade in money, build churches, teach schools, and collect and distribute alms. In all these operations they act by agents. Where benefits are derived, the corporation enjoys them. Where injury is inflicted, through their means, they ought to be responsible for it.

When the corporation of a town grades the streets, the object is 514] the benefit of the whole town. If an individual is injured, *it is right he should have redress against all upon whose account the injury was perpetrated. There is no justice in sending him to seek redress from an irresponsible agent. There is no propriety in compelling the injured party to look for compensation to the mere agent, who acted in good faith, according to the directions of his employers. And, when the agent is made responsible, leave him, for indemnity, to the discretion of the corporation.

All corporations act by agencies, and those agencies are composed of men who may be influenced by reprehensible motives, or tempted to do acts not warranted by law. In this case, the act is charged in the declaration to have been illegal and malicious. When a corporation acts illegally and maliciously, we conceive it ought to be made directly responsible. Such is the plain dictate of justice, and we see no technical rule of law that forbids us to act upon it.

The demurrer is overruled.